Good morning, your honors. George By appearing on behalf of the plaintiff, Park and Seller. You may proceed. Thank you, your honor. May it please the court. I was not the attorney in the lower court on this matter, and the plaintiff was in Pro Per Pro C recently. I was substituted in for the purpose of this presentation. So most of what I have to present is in written form, if you'll excuse me for reading some of that. This case is one of many where the defendants are mere actors in the demonstration to this and other courts that they have the right and proper assignments to collect a debt and to file fraudulent foreclosure documents. It is fact that defendants have signed numerous consent judgments and admitted to wrongdoing in foreclosure actions against borrowers in their ability to collect the debt. In the consent judgment, they actually admitted liability. Usually these consent judgments say that they don't concede liability. In most of them, they don't concede, but they raised their hands in Washington, DC, and sworn before the court that they were defrauding their customers. And that was the consent judgment of April of 2012. In this particular case, the debt collectors defendant Aurora Loan Servicing, and I'll refer to them as ALS if I may, and Quality Loan Service, and I'll refer to them as QLS if I may, do not have the right or ability to collect a debt on plaintiff's deed of trust or note or to file wrongful foreclosure documents in this court for mere monetary gain. The defendants ALS and QLS violated numerous California and federal laws in their scheme to collect a debt they do not own. Defendants ALS induced plaintiffs into a default status. This was a common practice. We can't give you a loan modification if you're current on your loan, so you'll have to skip some payments, and then we can consider that. But the plaintiffs in this case were never in default on their loan. And in fact, they had alternatives that they could have referred to or gone to in order to save their property, but they depended on the representations of the lender or purported lender at that time and defaulted, if you will, for the purpose of getting a loan modification. The defendants, the plaintiffs, I'm sorry, plaintiffs to their detriment took the bait. They made six timely payments on the modification and ALS to preserve their investment. Furthermore, defendants have and continue to conceal the true identity of their beneficiary and proceeded with dual tracking and shadowing, if you will. They filed a notice of default, substitution of trustee, notice of trustee sale, a trustee's deed upon sale, and a subsequent unrecorded corporate deed of assignment after the sale. In other words, the corporate deed of assignment, giving them the right to do all these things, wasn't even of record at the time that they were doing these things. The plaintiffs don't know this. They're not aware of this. They're not served with the proper paperwork so that they know of all of this. The defendants, ALS, and its counsel failed to notice the corporate deed of assignment executed a month after the trustee's sale to this court but submitted it only to the Consumer Fraud Protection Bureau. Defendants recently executed and recorded a quitclaim deed to Nation Star Mortgage, LLC, on December 30, 2013 with numerous discrepancies. Keep in mind, the events of my client's case occurred way back in 2010. So we're talking about several years later. The defendant Quality Loan Service executed and recorded a substitution of trustee using their own employee, Mary Jane Sarn, as a merged vice president, another common practice by these collection agencies to induce the party to believe that they had the authority as merged to do these acts. Numerous courts and recent California bankruptcy judge has stated, any attempt to transfer the beneficial interest of a trustee without ownership of the underlying note is void under California law. And I'd like to cite, Your Honor, the Stetsch versus Aurora and Quality Loan Service. It's a Ninth Circuit court case by James Tilburg, senior district judge. And it's, I believe this is it, CV 1090547. And it's in Phoenix, I believe. You want to save the rest of your time for a bottle? I'm sorry, Your Honor. Would you like to save the rest of your time for a bottle? All of it. You want to save what you have left? How much do I have, Your Honor? I'm sorry. You just look in front of you. There's a little red number. I'd like to reserve just two minutes, please. I need to finish what I have here. Previous correspondence with the plaintiff's alias has admitted that the two different investors hold plaintiff's note. However, neither are mentioned in their NOD or their SOT, substitution of trustee, or the trustee's deed upon sale, or their still unrecorded corporate deed or assignment. Furthermore, defendants and their counsel have deliberately refrained to submit to this court a corporate deed of assignment allegedly executed on December 15, 2010, a month after defendants' QLS executed and subsequently recorded a trustee's deed upon sale on November 22, 2010, granting plaintiff's property to defendant ALS. Defendant ALS, later and most recently on December 31, 2013, recorded a quitclaim deed on plaintiff's property to yet another debt collector, Nation Star Mortgage. This quitclaim deed was purportedly executed back on April 10, 2012, and notarized by ALS Nation Star employee, Florida Baldwin, a month later on June 15, 2012, but not recorded until December 31, 2013. There's an investigation ongoing. Ms. Baldwin has not submitted her notary to the state of Colorado upon our request. There's an investigation going on, and she may be punished for her inability to produce her notary book to prove that she ever notarized any of these documents. This is the kind of ongoing fraud that we're running into that we've discovered after the case was filed, after the court took its action in the lower court. Your Honor, we're just asking this court to remand this case back to the lower court for further proceedings. Allow us to go through our discovery, our presentation, and make this case a viable case before the court for the multiple counts of fraud that have occurred. Reserve the balance, please. Thank you. We'll hear from the other side. Good morning, members of the court. My name's Brian Leifer. I represent Appalese Aurora Loan Services LLC Mortgage Electronic Registration Systems, Inc., and Lehman Brothers Bank FSB. This court should affirm the ruling of the lower court. The lower court got it right. With respect to the key allegations in the complaint, we look at, in courts throughout the country, the circuit courts, especially this court in the Ninth Circuit, look at whether the defendant below is a debt collector. That's always the first analysis into the statute, whether you're a debt collector. And most courts in the country focus on whether or not debt was acquired prior to collection activities. Well, Aurora's a little different than some of the other cases that we've been looking at, right? It is a little different in the sense that the facts below, as alleged, are that the parks took out a loan. They made 44 mortgage payments, this is pleaded in the complaint, to Aurora Loan Services before defaulting. And then Aurora, after those 44 payments, began nonjudicial foreclosure collection efforts. So based on those allegations, the district court looks at that and says, well, you just noted that there was no transfer of debt to some other law firm collecting it, some other collection agency. You originated the loan. And immediately, Aurora Loan Services began servicing the loan. And then when there's a default later on. Aurora owned the loan? I'm sorry, yeah? Did Aurora own the loan? Aurora was a loan servicer. So the company that originated the loan was Lehman Brothers Bank FSB, which became Aurora Bank. And immediately upon the sale of that loan, and usually what happens is a loan servicer takes over. In the prior case, BEC Home Loan Servicing was a loan servicer here. Aurora was trying to collect the debt, or to service the debt, on behalf of Lehman Brothers. That is correct. And that happened immediately. And that happens very often in these cases where a servicer, and it's not just collection. Why isn't that enough? Why, I'm sorry? Why isn't that enough that they used this other entity for debt collection? Because when Aurora began servicing the loan, the loan was not in default. At the time Aurora began servicing the loan, as previously said. But it didn't acquire the loan. It was just a servicer, right? It was a servicer. And it's different if you acquire the loan. It's your loan you collected, right? But Aurora here wasn't collecting its own loan. Aurora was collecting loans as a fiduciary on behalf of the lender, which is a securitized trust pool. So it gets a little bit complicated. I'm sorry, I asked a question, and you seem to be saying yes, all right. You know what I mean? Well. Can you just start with a yes or no? OK, Your Honor, please. Remember the question? Yeah, if you could just clarify the question. I'm not going to clarify the question. Do you remember the question? Well, I believe your question was whether or not. It's not a question of belief. You either remember, or you don't remember. If you don't remember, I'll repeat the question. If you do remember, answer the question. If you can. It's not a question of faith here. Your Honor, if you can repeat the question, I'd appreciate it. It's always good to figure, you know, listen to questions and try to answer them. Aurora was not collecting its own debt. Yes or no? Aurora was not collecting its own debt. You don't have to repeat the question. Just start with yes or no, and then you can give me as much of an explanation as you want for whatever answer you give. It's one of those things, it's a binary. It either was collecting its own debt, or it was not collecting its own debt. If you haven't noticed, it's really easier to say yes or no. I'm just having a difficult time saying yes or no. Well, let me put it this way. If you want to win with me, you're going to answer yes or no. Yes, Your Honor. If you don't want to win, that's OK. You don't have to answer the question at all. And I'll try to figure it out on my own. And you can talk about whatever you want. OK, so you remember the question? Yes, I do, Your Honor. Because everybody else in the court remembers the question. I will answer the question as no, Your Honor. OK. So why is that dispositive right there? Well, the reason why is that these loans are securitized. And after the loans are given out, a loan servicer is hired, not just to collect debt, but to service the loans, to do inspections on the property, to take payments, to do whatever is needed on behalf of the trust pool who actually owns the loan. So the loan servicer, Aurora, is actually acting in more of a fiduciary capacity.  And there's case law on that, Your Honor. So the question of, is it theirs? Well, they're collecting payments and then remitting those payments on to Lehman Brothers Bank, or the trustee of the securitized trust pool. That's their role as servicer. So in a sense, it's like a flow of money from the loan servicer to the trust pool. And at the time, and the dispositive issue here is that at the time Aurora acquired the servicing rights, Your Honor, the loan was not in default. The loan went into default in 2009 after 44 payments had been made. So the case law strongly suggests, and Schlegel. What about 1692A6, which says, I believe, notwithstanding exclusion provided by clause F of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own, which would indicate that a third person is collecting or attempting to collect such debts. Did I read it correctly? Yes, Your Honor. Do you remember that section? And I do, Your Honor. OK, talk to me about it. Well, what I would say is that as a threshold issue, because the debt wasn't in default, that statute wouldn't even be applicable. The whole FDCPA would be inapplicable because, initially, the courts look at whether or not there is a collection of debt prior to default. And that didn't happen with the facts alleged here, Your Honor. So with respect to- But eventually, it was in default, right? Eventually, it was in default, Your Honor. And it did go into default in 2009. And when it did go into- And Aurora was involved in that. Correct. So Aurora has essentially been involved since loan origination, all until the present day of default in 2009. So if Aurora's not a debt collector, we still have to then deal with whether the nonjudicial foreclosure is a debt under the F- that we would still have to go there, right? We wouldn't stop. Well, the analysis stops at, hey, is Aurora a debt collector? But if we said Aurora was a debt collector, then we have to go further. Then you would have to go further, Your Honor. And you'd have to go further and say, OK, so Aurora is a debt collector now. Is nonjudicial foreclosure debt collection? And the answer to that is no. But Glazer says it is, right? So the other circuits seem to. So why, in our case, should we not follow Glazer? Absolutely, the Ninth Circuit should not follow Glazer. I would submit here that within the Ninth Circuit, a case called Schlegel is controlling. Also, De Dios, the side in the Ninth Circuit, would also be controlling. And all the courts, the district courts, followed Schlegel and De Dios. Well, but the district courts don't tell us what to do. That is correct, Your Honor. I do understand that. It's like we don't tell the US Supreme Court what to do. That is correct. We try, God knows. Right, and the issue of- But we seldom succeed. And the issue of- I'm sorry, Schlegel is a Ninth Circuit opinion? Yes, Schlegel is a Ninth Circuit opinion, Your Honor. And Schlegel is controlling here. And that decision came out in 2013, Judge Akuta and Judge Wallace and Senior District Judge Garbus. And so we would submit, of course, that Schlegel is controlling, as well as the case De Dios, which was decided in the Ninth Circuit. And that was decided in 2011. To get to the issue, I have a brief amount of time. Judge Kosinski's earlier question with respect to the CFPB. The CFPB did issue an amicus brief in the 11th Circuit in 2011 in a case called Burr Services, American Home Loan Servicing. And the CFPB has taken a position that foreclosure attorneys are debt collectors. And the distinction there, though, again, is that these foreclosure attorneys, and this happens a lot in Florida, they get the debt while it's in default, and then they go after the loan. That is not what's happened here, Your Honor. Well, all you're saying is that in the 11th Circuit, they didn't go as far as they might go here if we asked them the question. So naturally, you want us to ask them the question, right? Yes, Your Honor. You do? Yes. So you think we should ask for their view? No, I do not, Your Honor. You're afraid? I'm not afraid. I just feel that, with respect to the fact that You feel your client needs the money, right? No, no, Your Honor. It's starving. No, Your Honor. I just feel that, with respect to the Ninth Circuit, the Ninth Circuit can sufficiently interpret the FGCPA to come to the right conclusion. Well, but you understand the Brand X problem. We sit here. We work on an opinion. You know, writing an opinion is easy. No, I do not, Your Honor. No, it's not. It takes a lot of work. You have to get concurrence with your colleagues and all that. And then along comes the agency and files an amicus brief somewhere else, and bam, it's blown out of the water. Isn't it wiser to get the agency's view now, and we can factor into our opinion? You have nothing to be afraid of, do you? I mean, they, they, they, they. I would say no, and I would also note that the Eleventh Circuit actually did not make any type of decision and did not expressly say that they were following anything that the CFPB suggested in their amicus brief, Your Honor. So what? So... They, they had read Brand X. So the, so the Eleventh Circuit kind of said, well, we see that you submitted your amicus brief and we're just going to kind of take things. We're, we're going to kind of make our own decision without considering the suggestions by the CFPB, Your Honor. Okay. Can I ask you one question about, about the, in the earlier action, was there actually a final judgment entered? Didn't, didn't the judge not decide the issue as to one party? I think quality... What, what had happened in that case is with respect to our clients, the FDCPA claim was dismissed with prejudice. The remaining claims were dismissed without prejudice, but... I know, but the case wasn't resolved as to all parties. That is correct, Your Honor. The case was not resolved. Quality, the foreclosure trustee, remained in the case and then prevailed on a motion to dismiss. And then that resulted in another appeal. That was the final judgment there, Your Honor. So once... No, there was an earlier action brought before the action that's on appeal here. Well, there were, there were, this is an appeal from both the same case, Your Honor. And so they, there were two appeals from the same district court case. The appellants appealed this case, then... Any more do we have? Quality was dismissed in the same district court case, resulting in two appeals of the same case. So what had happened was the Ninth Circuit decided to... They basically just merged the cases and go forward with this case, which is the earlier file case. Thank you. Thank you. Those are just commentable questions. I just know that you're over your time, sorry. Thank you. Thank you, Your Honors. I'm gonna be very brief on this one. Yes, what counsel says is true. They're just a debt collector. They don't own the loan. They're not the lender in this case. And through a series of documents that they file with the various entities, they have filed documents that are fraudulent. We've discovered these fraudulent documents over our discovery, even after the lower court... Well, it is a little different though, right? I mean, there are services. Yes. I mean, they provide a service during the life of the loan and then they continue, the loan goes into default to collect. It just somehow seems not entirely applicable. Well, Your Honor, the fact that the servicers, we question their right to foreclose on the property. The right to foreclose is the trustee of the holder of the loan, the lender itself. Now, not only the conduct of this loan servicer in asking these people to skip mortgage payments and go into a loan modification, having them pay six payments in modification, having them virtually qualified by dual tracking, go down and foreclose on their property and take it away from them in a foreclosure sale at the same time. This is well known. This conduct has been held wrongful in many, many courts in the state of California. And California's attorney general, Camilla Harris, has filed an amicus brief in the Yablonsky case in which she stated these very things. The lenders cannot do this. I mean, I can quote what she has said. I've written it here. Citing that a foreclosure party's lack of authority is a proper basis on which the homeowners may challenge a foreclosure because void assignments deprive a foreclosing party of the authority to foreclose. A homeowner may bring a wrongful foreclosure action on that basis. That's where we are exactly on point, but we're in federal court. We're not in the state court with this case. Respectfully, thank you for allowing me to present my small brief, if you will. 10 minutes is hardly enough time to really get the point across of what this case is about. My clients have lost a huge amount of money in their investment, and they want to try to have their rights heard in court. And we believe that the parties have deprived them of their constitutional rights to be heard. Thank you, Your Honor. Thank you. Case is argued. We'll take a brief recess, about five minutes, before we hear the remaining.
judges: Korman, Kozinski, Callahan